THOMAS BATES, in equity, *vs.* GEORGE HURD *et al.*

Franklin, 1874.—May 2, 1876.

*Equity. Trusts. Accounting.*

A distinct written statement of a trust in lands, its subject and nature, the parties and their relation to it and each other, subscribed by the party to be charged therewith, is sufficient to meet the requirements of R. S., c. 73, § 11, whether addressed to or deposited with the *cestui que trust* or not, or whether intended when made to be evidence of the trust or not; and will be regarded as creating and declaring a trust that will be valid against the trustee and those claiming under him with notice thereof.

It is not necessary to make the heirs of a deceased trustee parties to a bill in equity to enforce a trust where the land in which it is claimed has been duly sold by the administrator of his estate under license from the probate court.

N. B. subscribed a valid declaration of a trust in favor of his brother, the plaintiff, in certain lands, and mortgaged them in his lifetime. The female defendant administered on the estate of N. B., had knowledge of the trust, returned the farm in her inventory as subject to the trust, sold it as administratrix, bought it of the purchaser, and has been in possession ever since with her husband the co-defendant, receiving the rents and profits, and disregarding the plaintiff's claim; the plaintiff claims no rights as against the mortgagee, who has never been in possession. *Held,* that he need not make the mortgagee a party under such circumstances, but may have a decree in equity against the respondents, declaring the land while in their hands subject to the trust which he seeks to enforce; and for his share of the rents and profits accrued (to be ascertained by a master unless agreed upon) with costs.

BILL IN EQUITY to declare a trust and for an account.

*P. H. Stubbs,* for the plaintiff.

*H. L. Whitcomb,* for the defendants, submitted without argument.

BARROWS, J. In 1847 one Kennedy gave to Nicholas Bates and his brother Thomas, the plaintiff, a bond conditioned for the conveyance of certain parcels of land, (estimated at about two hundred and fifty acres,) upon payment of the obligee's notes. In 1851, before the maturity of all the notes, an adjustment was made, by which, in satisfaction of the bond, he made conveyances of the bonded land in two separate parcels;—one to Wm. W.

Bates, a third brother, and the other to Nicholas, who (with Wm. W. and the plaintiff) subscribed and delivered to Kennedy a receipt indorsed upon the bond, setting forth that he had received the deed of his portion, "for himself and in trust for his brother Thomas Bates, according to what the said Thomas has or may pay towards the same real estate which amounts at present to seventy-five dollars." The price of the parcel thus conveyed to Nicholas was $450, and Nicholas seems to have admitted a resulting trust in favor of the plaintiff to the amount of one-sixth of the purchase, which was binding upon him and all claiming under him with notice.

Indeed the writing subscribed by Nicholas Bates seems to be tantamount to a declaration of an express trust, so as to satisfy R. S., c. 73, § 11.

The words "created and declared" in that statute seem to be construed by the courts to be synonymous with "manifested and proved" as they stood in the original seventh section of the statute of frauds, 29 Car. II, c. 3. *Forster* v. *Hale*, 3 Ves., jr., 707. S. C., 5 Ves., 308. *Unitarian Society* v. *Woodbury*, 14 Maine, 281. *Barrell* v. *Joy*, 16 Mass., 221. *Pinnock* v. *Clough*, 17 Vt., 508.

From the cases just cited and numerous others we see that a letter, memorandum or recital subscribed by the trustee, whether addressed to, or deposited with the *cestui que trust* or not, or whether intended when made to be evidence of the trust or not, will be sufficient to establish the trust when the subject, object and nature of the trust, and the parties and their relations to it and each other, appear with reasonable certainty.

The existence of a trust in favor of the plaintiff, which he may enforce against Nicholas Bates and his representatives, and all claiming under him with notice of the trust, may be regarded as established.

Nicholas Bates mortgaged the property to Kennedy to secure a balance of the purchase money, and subsequently made two other mortgages thereon to Philip M. Stubbs, the scrivener who drew the conveyances from Kennedy and wrote the indorsement upon the bond containing the declaration of the trust. Both of

these last named mortgages were assigned to Prince Thompson, who had no knowledge of the trust, and has given notice of foreclosure, but has never been in possession of the property.

Nicholas Bates died in January, 1866, leaving a widow, Keziah M. Bates, now Keziah M. Hurd, who is one of the respondents, and who took out letters of administration on his estate, inventoried the land, as subject to the mortgage to Prince Thompson, "and being also held as a trust estate for Thomas Bates to the amount of about $140." This sum is apparently the amount of the $75 originally paid in by the plaintiff towards the purchase money, with interest up to the time of the making of the inventory. The widow continued in possession of the land, receiving the rents and profits until November, 1868, when she made sale thereof by license from the probate court, without making mention of the trust, to Daniel Day, who mortgaged it back to her for part of the purchase money, and took possession. The widow married George Hurd, the other respondent, and on September 9, 1870, took a quitclaim deed from Day, and since then the two defendants have occupied or had the exclusive use, income and profit of the premises.

The plaintiff does not claim any rights as against the mortgagees. The heirs of Nicholas Bates are no longer interested, as the sale by the administratrix devested them of all right and title in the premises.

The administratrix in her inventory admitted the plaintiff's rights, and is fully chargeable with notice of them. The other respondent, her husband, seems to have occupied only under her. But a joint reception by them of the rents and profits is admitted in the agreed statement. He is therefore responsible to the plaintiff on this score with her. The testimony establishes the fact that the plaintiff made a claim upon the administratrix for his interest, and that there was more or less negotiation between them looking to an adjustment. It is unfortunate for both that an equitable adjustment could not be reached without litigation.

In the hands of these respondents it is obvious that the property is subject to the trust which the plaintiff seeks to enforce.

They object that he might have had an adequate remedy at law

by a suit for his share of the income. But cases of trust are, under our statute, specially made the subject of remedies in equity, and moreover it might be desirable for him to have the decree to which he is entitled in equity as against them, in view of the possibility of a redemption.

Unless the parties can agree as to the proper sum to be allowed for the past rents and profits, a master must be appointed to ascertain them. *Bill sustained. Estate declared subject in the hands of these respondents to the trust asserted. Costs for the complainant. Master to be appointed at nisi prius, if required.*

APPLETON, C. J., WALTON, DANFORTH and PETERS, JJ., concurred.